No. 28,050.

ROBERT E. ISRAEL, *Appellee,* v. HARRY A. LAWRENCE, *Appellant.*

(270 Pac. 602.)

Opinion filed October 6, 1928.

*A. V. Roberts, Benjamin F. Hegler* and *Roger` P. Almond,* all of Wichita, for the appellant.

*Thomas C. Wilson* and *Henry Lampl,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for a real-estate commission. It was tried to a jury, which failed to agree. At the close of plaintiff's evidence the defendant interposed a demurrer to the evidence. This was overruled. This appeal is from that ruling. The sole question presented to us is whether that ruling was correct. In the trial of a civil case the statute (R. S. 60-2909, 3d clause) authorizes the filing of a demurrer to evidence, and by R. S. 60-3302 an order which sustains or overrules a demurrer is an appealable order; see *White v. Railway Co.,* 74 Kan. 778, 88 Pac. 54.

When a demurrer is interposed to evidence the rule which governs the trial court in passing upon the demurrer is that if the evidence which has been received in the case, considered as favorably to the party offering it as can reasonably be done, is sufficient as a matter of law to support a judgment in his favor, the demurrer should be overruled. If, so considered, it is not sufficient to support a judgment the demurrer should be sustained. (*Mayse v. Grieves,* 124 Kan. 754, 756, 262 Pac. 541, and cases there cited.)

Plaintiff is a real-estate broker at Wichita and has been active and prominent in that business for many years, confining his business largely to business property. The defendant (and his two sisters, for whom he acted) owned a business property at the corner of Douglas and Emporia avenues in Wichita. In 1919 defendant listed this property with plaintiff for sale at $100,000. Plaintiff made some efforts to sell it at that time, but was not successful, and the matter of the sale of the property appears to have been dropped for some time. In May, 1926, defendant saw plaintiff and told him he was really anxious now to sell the property, and asked plaintiff to find a buyer. They discussed the matter in some detail, especially with reference to rents and taxes. Defendant stated he thought he should get $150,000 for it, and when plaintiff suggested perhaps that was a little high, defendant asked him to try to get an offer. Under that listing plaintiff became active in an effort to sell the property, and talked to perhaps a dozen persons, one of whom was interested, but concluded not to purchase. Soon after this listing Mr. Winston Wheeler, of the Wheeler-Kelly-Hagny Trust Company, made an appointment with plaintiff. This trust company handles almost all

classes of business pertaining to real property, including that of a real-estate broker, sometimes acting for the buyer and sometimes for the seller. Mr. Winston Wheeler told plaintiff he had a client, whose name he did not care to disclose, who was interested in some property in down-town Wichita, and wanted to know what plaintiff had. They talked of several properties in the neighborhood of Lawrence and Williams streets, and plaintiff told Mr. Wheeler about defendant's property. Plaintiff reported to defendant that he had a new prospect through the Wheeler-Kelly-Hagny office. A day or two later he saw Mr. Winston Wheeler and asked how he was getting along with defendant's property. He said his buyer wasn't much interested, but that he would like to get him all the information as to income, taxes, and all detailed information as to the building, and said he would put it up to him. Plaintiff went to his office and called defendant on the telephone and told him he wanted that information for Mr. Wheeler, and defendant replied that if that was whom he wanted it for, they had it all in their loan division files; that he had made a loan on the building through that company a year or so before, and rents, taxes, etc., were about the same as they were then. Plaintiff then went to Mr. Wheeler's office and told him that information was in his loan files and suggested that he get them out. Mr. Wheeler was too busy at that time, but said he would get out the files and look it over. Plaintiff then went to defendant, and as to the conversation there, plaintiff testified:

"I got in the car and went over to Mr. Lawrence, and told Mr. Lawrence, 'I don't know whom I am working with over there, with Wheeler, but I suspicion it is Mr. Wheeler himself, of the Wheeler-Kelly-Hagny Company, that is trying to buy this building, but they refused flatly to tell me who the buyer is, and I want it understood directly with you—I have been frank with you—that you will protect me on any commission with any buyer that comes through the Wheeler-Kelly-Hagny office, or the firm.' And he said, 'We don't care who we sell it to'; he said, 'You hop to it, and we will see that you get your commission,' and I said, 'All right,' and that's all there was to that, that we talked of that day."

Plaintiff then had to go to Tulsa on business, but before going again saw Winston Wheeler and told him he really thought he could sell this property to his man if Mr. Wheeler would tell him who he was. This Mr. Wheeler declined to do, but said:

"You don't have to sell this man anything. When Dad (referring to his father, H. V. Wheeler, president of the Wheeler-Kelly-Hagny Trust Company) O.K.'s this building, he will buy it. . . . He is the man that has got to O.K. it."

Plaintiff replied, "All right," and said he would take it up when

he got back from Tulsa. Before going to Tulsa plaintiff had another conversation with defendant, who asked how he was getting along. Plaintiff replied that he was working with Winston Wheeler, "but I can't tell where I am getting. I will take it up again just as soon as I get back from Tulsa, a week later."

When plaintiff returned from Tulsa he learned that the property had been sold. The written contract for the sale showed the Wheeler-Kelly-Hagny Trust Company to be the purchaser and the price to be $133,000.

It will be noted that by this evidence the agreement between plaintiff and defendant was that plaintiff was to be paid a commission if the sale was made to any of the Wheelers, or if it went through the Wheeler-Kelly-Hagny office, and plaintiff's evidence tended to show that the sale was made to the Wheeler-Kelly-Hagny Trust Company. The point argued by appellant is that the plaintiff did not know who the purchaser was and never at any time brought the purchaser in touch with the defendant. Under the agreement, as testified to by plaintiff, that was not necessary, defendant having agreed to pay the commission if the sale went to any of the Wheelers, or through their office. It necessarily follows that the court correctly overruled the demurrer to the evidence.

On behalf of defendant evidence was offered tending to show that the Wheeler-Kelly-Hagny people had an old listing on this property, and that while the contract for the sale was made by defendant to the Wheeler-Kelly-Hagny Trust Company, that company was really acting for Paul J. Wall, who was the real purchaser and to whom defendant caused a deed to be made some months later. Defendant's testimony controverted that of plaintiff with reference to the particular contract of listing. At the close of all the evidence defendant moved for a directed verdict in his favor. That was overruled, and an appeal was attempted to be made from that ruling. This is not an appealable order. It is simply a request for an instruction, and error, if any, in refusing it can be questioned on appeal only after the case itself has reached judgment and a motion for a new trial has been filed and overruled. Perhaps it is not out of the way, however, to say that there was no error in the ruling of the court in this respect, for the evidence on behalf of defendant, above referred to, presented simply a controverted issue to be submitted to the jury.

Finding no error in the record, the judgment of the court below is affirmed.