No. 33,619

LOUANNA WALKER, *Appellee* and *Cross-appellant,* v. S. H. KRESS AND COMPANY and VERN DECKER, *Appellants.*

(75 P. 2d 820)

Opinion
filed January 29, 1938.

P. E. Nulton and R. L. Letton, both of Pittsburg, for the appellants.

John W. Hamilton, Fred A. Walker, both of Columbus, Lawrence Walker, of Pittsburg, and E. B. Morgan, of Galena, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover damages for personal injuries alleged to have been sustained by plaintiff, a customer in defendant's store, as a result of a fall on a slippery floor. The jury was unable to agree, and a mistrial was declared. The defendants, S. H. Kress & Co., and Vern Decker, its general manager, filed separate general demurrers to plaintiff's evidence, which were overruled. From those rulings the defendants appeal.

The defendants contend plaintiff's evidence was insufficient to establish the charge of negligence. The material allegations of negligence were:

"That said floor at said time and place had been recently covered with a thick coating of oil, making the floor, at the place where she slipped and fell, slippery and dangerous . . .

"That said injuries and her consequent physical condition are the direct and proximate result of the carelessness and negligence of the defendants and each of them concurring therein, in placing on said floor large quantities of

oil and rendering said floor and aisle in said store slick, slippery and dangerous to the life and limb of the customers of said store, including this plaintiff, and knowing said aisle to be in such dangerous condition, negligently and with wanton disregard for the safety of persons, including this plaintiff, trading in or entering said store, permitted them to use said aisle notwithstanding the danger which they knew, or in the exercise of due diligence could have known, was involved in the use thereof."

The answer admitted the defendant, Decker, was the general manager of S. H. Kress & Co.; it contained a general denial, and alleged the proximate cause of plaintiff's injury was her own negligence.

Was the evidence sufficient to take the case to the jury? Plaintiff was accompanied to the store by her daughter, Lorene Walker. The material portion of her daughter's testimony was in substance as follows: She lived at Weir, and was deputy clerk of the district court of Cherokee county; she and her mother entered defendant's store at about eight o'clock in the evening of October 12, 1935, to purchase a dog collar; they entered the store from the east and walked west in the second aisle from the south; she preceded her mother by probably three or four feet; they were in no rush; they had passed the first section of counters when she heard somebody slip and when she turned around, her mother was lying in the middle of the aisle on her back with her head to the west; she did not see her mother fall, but immediately went back to help her; a man standing in the aisle helped her mother to a sitting position; a girl who worked in the store also helped her mother; she first saw the defendant, Decker, the manager of the Kress store, that evening in the anteroom; her mother was assisted to the back part of the store; she had a conversation with Mr. Decker, the pertinent portion of which was:

"A. Well, I didn't know who he was at the time, but he asked me what happened and I said 'my mother slipped on the floor.' He said, 'She did?' and I says, 'Yes, your floors are oiled,' and he said, 'Yes'—I don't know whether he said, 'They were heavily oiled' or 'freshly oiled,' but he made the remark that they were oiled floors.

"Q. Did he make any further statement in regard to the floor there? A. Yes, he told my brother that they were oiled.

"Q. Did he say anything about when they were oiled? A. No, if he said 'freshly oiled' I presume he said they were just oiled, but I don't recall whether he said 'freshly' or 'heavily.'

"Q. He said either 'freshly oiled' or 'heavily oiled'? A. Yes, sir."

The witness returned to the place where her mother had fallen and observed a streak about three quarters of an inch wide and

possibly eighteen inches or two feet long; her mother was wearing Red Cross shoes; they were walking shoes and the heel was possibly a little more than an inch in height; her mother wore a blue spring coat; after the fall there were dirty spots on the back of her coat, nearly up to her shoulder; she felt of the spotted places on the coat; in her judgment the dirty spots on the coat were oil; her mother's hat had the same kind of dirt on it.

On cross-examination the same witness testified in substance: When she first saw her mother she was prone on the floor; at the time she had the conversation with Mr. Decker there were present, her mother, Mr. Decker, Rachel Walker, her sister-in-law, and one of the employees; she returned to the spot where her mother had fallen within about ten minutes after the fall, to see whether she had dropped any packages; her mother's heels contained leather heel caps; the aisle was open for traffic and she saw nothing which prevented anyone from using it.

Mrs. Rachel Walker, a daughter-in-law of plaintiff, testified in substance: She did not see the accident; Lorene, the daughter of plaintiff, came to Short's Bootery Store to tell the witness' husband about her mother's fall, and the witness went to the Kress store where she found the manager, another girl and the plaintiff; Lorene, the daughter, went back with her; she had a conversation with the manager, which was related as follows:

"Q. Will you just relate what was said in that conversation? A. Well, we were talking about the accident and he made the remark that the floor had been freshly oiled, and he said it was very slick."

On cross-examination the same witness testified in substance: She came to the Kress store between eight and eight-thirty, which was near closing time; the store closed at eight-thirty; her husband accompanied her and they went to the back entrance; at the time of the conversation there were present Mr. Decker, her husband, Lorene and the plaintiff; this conversation was between her and Mr. Decker.

Mrs. George Redell, a customer in the store, stated in substance: She did not see Mrs. Walker fall, but she heard her fall; she thought plaintiff had fallen forward on her face, but she would not say just how she fell.

W. S. Lyerla, a teacher in the College at Pittsburg, testified in substance: Plaintiff had started to fall before he saw her; she fell between the counters and he did not see the impact, but it seemed to him she had fallen slightly backward.

The material portion of plaintiff's testimony in substance was: She did not know exactly how she fell, but while walking in the aisle she suddenly slipped and fell; she was facing almost directly toward the front of the store when they picked her up; she did not see anything which caused her to fall; she fell full length and hit the back of her head; it was her head which hurt her most; she was taken to the rear of the room and a doctor was called who gave her emergency treatment; she was then taken to Mt. Carmel Hospital.

On cross-examination she testified in substance: She thought she had been in the store as frequently as two or three times a month over a period of several years; she had paid no particular attention to the floor; she knew it was a board floor, but she had not given it any thought; she supposed it was an oiled floor, but she did not know what was on it; she was facing east after she fell; Doctor Rush came to attend her; she heard people talking all around her, but she did not remember any of the conversation.

Defendants do not contend there was no evidence of injury, but insist negligence was not shown. They claim it is not negligence per se to oil a floor, and that a storekeeper is not an insurer of the safety of his customers. In support of the rule they cite *Thogmartin v. Koppel,* 145 Kan. 347, 65 P. 2d 571; *Relahan v. F. W. Woolworth Co.,* 145 Kan. 884, 67 P. 2d 538, and other authorities. Plaintiff concedes that to be the rule. Defendants, in effect, urge that notwithstanding the floor was shown to have been very slippery it was nevertheless imperative that plaintiff further show in what particular defendants failed to exercise due care in oiling the floor. They contend it was in no wise shown an improper method of oiling was employed, or that the wrong mechanism was employed, or that unsuitable oil was used, or that it was applied in excessive quantities. In support of that doctrine our attention is directed to decisions from foreign jurisdictions, among which are *Spickernagle v. Woolworth,* 236 Pa. St. 496, 84 Atl. 909; *Tenbrink v. F. W. Woolworth Co.,* (R. I.) 153 Atl. 245; *McCann v. Gordon,* 315 Pa. St. 367, 172 Atl. 644; *Ilgenfritz v. Missouri Power & Light Co.,* (Mo.) 101 S. W. 2d 723; *Smith v. Union & New Haven Trust Co.,* 121 Conn. 369, 185 Atl. 81; *Bonawitt v. Sisters of Charity,* 43 Ohio App. 347, 182 N. E. 661; *Kipp v. F. W. Woolworth & Co.,* 150 App. Div. 283, 134 N. Y. S. 646; *J. C. Penney Co. v. Robison,* 128 Ohio St. 626, 193 N. E. 401, and *Dimarco v. Cupp Grocery Co.,* 88 Pa. Superior Ct. 449.

The list contains well-reasoned cases, but we do not find that they support a statement of principle quite so sweeping and general in its application as that urged ·by·.defendants. Can it seriously be contended plaintiff's action must fail, notwithstanding·she.has shown a dangerous condition to exist at the time of the fall, simply because she did not see or know the exact method employed by defendants in oiling the·floor and hence was unable to show an improper method had been used? Does an injured customer have the burden of showing the exact quality or quantity of oil which properly should have been applied to a wooden floor, without knowing the previous condition of the floor, after actually having shown the floor to be very slippery? We think not. Circumstances may arise under which proof of some of the factors suggested, or all of them, may become material, but such is not the rule where the condition of the floor has been established as dangerous. In the Thogmartin case, *supra,* it was said:

"Defendant's argument on its demurrer is·-limited to the contention the evidence does not show negligence; that there was no evidence as to the manner in which the janitor mopped the floor and in the absence thereof it will be presumed due care was used; that mopping of a floor is not negligence per se and therefore plaintiff's evidence does not warrant recovery. . . . It may be conceded that mopping a floor is not negligence per se, and it is true there was no direct evidence the mopping was not being properly done, but there was evidence that it was being so done that the floor was wet and slippery when plaintiff entered and fell, and that the condition was not observable to her until she had fallen. If there was any defect in her proof as to the slippery condition of the floor, it may be remarked· that it was corroborated in part by defendant's janitor, who, as a witness for his employer, testified that after she had gone about five or six feet she slipped or skidded.

"We cannot say as a matter of law that plaintiff's proof showed there was not a latent defect in the floor caused by the acts of the janitor in mopping the linoleum covering.

"From what has been said it follows the trial court did not err in denying defendant's request for a peremptory instruction." (p. 350.) (See, also, *Bury v. Woolworth Co.,* 129 Kan. 514, 283 Pac. 917.)

In the instant case the necessary testimony was supplied by the evidence introduced on behalf of the plaintiff. Assuming, however, that some such proof as defendants urge, was in fact necessary. in the instant case, was not the record evidence some proof in itself that the oiling had not been properly done? The evidence was the manager had not only said "the floor had been 'freshly oiled,' or 'heavily oiled,'" but he had also said "the floor had been freshly oiled and it was very slick." If the floor was very slick, can we say

there was no evidence the oiling had been done in an unreasonable or improper manner? Obviously not. For the purpose of the demurrer, the trial court was obliged to accept that description as the manager's own estimate of the condition of the floor. The manager's statement further disclosed knowledge by defendants of that condition. (*Bury v. Woolworth Co.*, supra.) The evidence showed the aisle was open for use and that plaintiff was using it in an ordinary manner. There is nothing in plaintiff's evidence to indicate she observed, or in the exercise of reasonable care should have observed, its slippery condition. She was not warned concerning its condition. She wore walking shoes. The mark where she slipped was from eighteen inches to two feet in length. There was oil on her coat nearly to her shoulders, and also on her hat. The length of the marks on the floor tend to indicate she may not only have slipped but that she may have slid. These various facts, when considered as a whole, indicate or at least tend to indicate, the floor was not oiled in a reasonably careful manner.

In passing upon the demurrers the court was, of course, required to view plaintiff's evidence in the light most favorable to her and to allow all reasonable inferences in her favor. (*Prewett v. Sholl*, 120 Kan. 158, 242 Pac. 149; *Hill v. Southern Kansas Stage Lines Co.*, 143 Kan. 44, 53 P. 2d 923.) It follows the demurrers were properly overruled.

This brings us to a consideration of plaintiff's cross-appeal. That appeal was perfected from several rulings, but plaintiff now urges only the alleged error in orders excluding portions of her testimony. Defendants assert she is not entitled to have the alleged errors reviewed. They contend she filed no motion for a new trial and that such motion is a prerequisite for a cross-appeal as well as for an original appeal. In support of their contention they cite *Wheeler v. Caldwell*, 68 Kan. 776, 74 Pac. 1031; *King v. Stephens*, 113 Kan. 558, 563, 215 Pac. 311; *Bolinger v. Giles*, 125 Kan. 53, 57, 262 Pac. 1022. In those cases a judgment had been rendered. In the instant case a mistrial was declared and hence no issue of fact had been examined and determined. There was no occasion for a motion for a new trial by the plaintiff, in order to obtain a reëxamination of a fact concerning which there had been no previous examination. G. S. 1935, 60-3001, defines a new trial as follows:

"A new trial is a reëxamination in the same court of an issue of fact after a verdict by a jury, report of a referee or a decision by the court."

See, also, *Wagner v. Railway Co.*, 73 Kan. 283, 284 Pac. 299.

Defendants next urge that if evidence was erroneously excluded such ruling constituted a trial error, and since a mistrial was declared, the question of its exclusion is moot and cannot be reviewed at this time. In support of that contention we are referred to the case of *Israel v. Lawrence*, 126 Kan. 586, 270 Pac. 602, in which a mistrial was declared, and where it was said:

"At the close of all the evidence defendant moved for a directed verdict in his favor. That was overruled, and an appeal was attempted to be made from that ruling. This is not an appealable order. It is simply a request for an instruction, and error, if any, in refusing it can be questioned on appeal only after the case itself has reached judgment and a motion for a new trial has been filed and overruled." (p. 589.)

That portion of the appeal in the Israel case constituted an attempt to perfect an original, a direct appeal from a nonappealable order. Obviously that could not be done. That is not the question in the instant cross-appeal. In this case the original appeal by defendants is from the ruling on their demurrers. That is a final order and hence appealable. (G. S. 1935, 60-3302; *Israel v. Lawrence,* supra.) The exact question before us is therefore not whether plaintiff, prior to a verdict and judgment, could perfect an original or direct appeal from a ruling excluding evidence. The real question is whether, after a final order, to wit, the overruling of a demurrer to evidence, and an appeal from such order, the appellee shall be denied the right to a review of an order excluding testimony, which testimony is not involved in the ruling on the demurrer, but the competency of which will again become an issue in the trial, simply because appellee filed no motion for a new trial, when under the circumstances she in fact never had an opportunity to file such a motion. We think not. In *Berg v. Citizens State Bank,* 127 Kan. 354, 273 Pac. 462, it was said:

"The plaintiffs complain of the exclusion of evidence. Defendants reply that the excluded evidence offered by the plaintiffs was not reproduced on the motion for a new trial, so that the alleged error is not available on review. (R. S. 60-3004, *Robinson v. Sullivan,* ante, p. 248.) The rule invoked by the defendant does not apply because the court sustained a demurrer to plaintiffs' evidence and no verdict or decision was rendered. (*Wagner v. Railway Co.,* 73 Kan. 283, 85 Pac. 299; *City of McPherson v. Stucker,* 122 Kan. 595, 256 Pac. 963.)" (p. 357.)

It is further our opinion the statute on cross-appeals, applicable to the instant appeal (Laws 1937, ch. 268, § 4), contemplates such right of review. The pertinent portion thereof reads:

"When notice of appeal has been served in a case and the appellee desires to have a review of rulings and decisions of which he complains, he shall, within twenty days after the notice of appeal is filed with the clerk of the trial court, give notice to the adverse party, or his attorney of record, of his cross-appeal and file the same with the 'clerk of the trial court, who shall forthwith forward a duly attested copy of it to the clerk of the supreme court."

It is not contended plaintiff has failed to comply with the procedure prescribed by the statute for obtaining such review.

This brings us to a consideration of the excluded evidence. As to a portion of such evidence we are obliged to first inquire whether the mere fact that plaintiff has a right of review, relieves her from the duty of presenting the excluded evidence to the trial court in such form as to enable that court and this court to intelligently pass upon its admissibility. Obviously it does not. The evidence of the witness must either be contained in the record of the trial, or be produced in support of a motion for a new trial by affidavit of the witness or by an oral examination of the witness unless the evidence be documentary or by deposition. (*Bank v. Seaunier,* 104 Kan. 7, 8, 178 Pac. 239; *Cole v. Drum,* 109 Kan. 148, 150, 197 Pac. 1105.) In the instant case we do not have before us the examination of the witness, Roundtree, together with the rulings thereon, nor do we have her affidavit of what her testimony would have been had she been permitted to testify. We simply have a statement of her counsel to the court of what he hoped to prove by the witness. Such general proffer is not a sufficient basis for appellate review in criminal or civil cases. (*Elliott v. Oil Co.,* 106 Kan. 248, 251, 187 Pac. 692; *State v. Ball,* 110 Kan. 428, 432, 204 Pac. 701; *State, ex rel., v. Wright,* 140 Kan. 679, 683, 684, 38 P. 2d 125.)

What about the excluded testimony of the witness, Coxie? His testimony was stricken, but his examination is a part of the record and we can therefore reach the alleged error. The witness may, perhaps, properly be called a wood expert. He was also familiar with the effect of oil upon various kinds of floors. There was no objection to his qualifications in these respects. His testimony as to when, in his opinion, the floor had last been oiled, was proper and should not have been stricken. His testimony to the effect that some of the boards in this particular aisle were much newer boards and that they had been replaced within the last few years was also competent.

Plaintiff's accident occurred on October 12, 1935. The witness, Coxie, was in the Kress store only once, which was on January 1,

1937, the day he examined the floor. The case was tried January 14, 1937. The testimony complained of most was the answer to the following question:

"Q. Could you tell whether or not the wood was thoroughly saturated with oil so that it would spew up, as you say? A. From the looks of it, it was."

According to the witness, that was the condition of the floor on January 1, 1937. The question to be determined was what was its condition, as to being oily, on October 12, 1935? The court overruled defendants' objection upon the condition that plaintiff would connect this testimony with the condition of the floor on the date of the accident. The connection as to the oily condition was never made and the court later properly struck that testimony. It also clearly appears plaintiff did not hope by this witness to show the oily condition on the date of the accident, as her counsel said, "I said I would show it was the same flooring." It was, however, necessary to show similarity not only of the flooring, but of the oily condition of the flooring to make the above testimony concerning the "spewing up of oil" on January 1, 1937, competent. (*Headington v. Central Building Co.*, 141 Kan. 338, 340, 41 P. 2d 1040.) In view of the foregoing, it follows that aside from the rulings excluding certain testimony of the witness, Coxie, the judgment must be affirmed. It is so ordered.