No. 34,685

THE STATE OF KANSAS, *Appellee,* v. E. A. MYERS, *Appellant.*

(102 P. 2d 1023)

Opinion filed June 8, 1940.

*Charles Rooney, John W. Lewis* and *Fred Rooney,* all of Topeka, for the appellant.

*Jay Parker,* attorney general, *A. B. Mitchell,* assistant attorney general, and *Harry A. Lanning,* county attorney, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a prosecution in two counts for an alleged violation of G. S. 1935, 21-1507 and 21-1508, commonly known and referred to as the slot-machine statutes. The first count, in substance, charged that defendant had set up and kept a slot machine in his restaurant on the 15th day of May, 1939, and had unlawfully induced, enticed or permitted one Herman Mohringer to

bet or wager money thereon. It is agreed that count was framed under the provisions of G. S. 1935, 21-1508. The second count charged defendant with operating a slot machine on the same day and that in connection with its operation cash prizes were given. It appears the second count was intended to be framed under the provisions of G. S. 1935, 21-1507. At the conclusion of the state's evidence defendant moved to require the state to elect upon which count it would rely for conviction. The motion was sustained and the state elected to rely upon the first count. On that count defendant was convicted, and he appeals.

The pertinent part of the state's evidence was, in substance, as follows: The slot machine was found on a counter in defendant's café on the evening of May 15, 1939. Defendant had an employee in the restaurant by the name of Edgar Roush. At about 8 o'clock p. m., of May 15, Pete Bieri, an undersheriff of Nemaha county, and Herman Mohringer, a deputy sheriff, drove up in front of defendant's café, located in the city of Sabetha. Bieri remained in the car. Mohringer entered the café and saw the slot machine. Mohringer inquired of Roush whether the slot machine was working and was informed that it was. Mohringer then asked Roush to give him two nickels for a dime. Mohringer worked the machine. He inquired of Roush who owned the machine, and Roush told him he did not know. Mohringer took the machine to the car. While Mohringer was in the café defendant came out of the café and talked to Bieri, the undersheriff. Defendant advised Bieri that he had a slot machine. Defendant inquired of Bieri whether the "heat" was still on slot machines. The machine was delivered to the car while defendant was visiting with Bieri.

The defense was in substance as follows: The machine was the property of one Chris Inger, who had obtained permission from defendant on the evening of May 13, 1939, to store the machine in defendant's padlocked shed behind the café; defendant had been out of town and did not know until a brief time before the officers arrived that the employee, Roush, had brought the machine into the café; the machine was not placed there by the employee, Roush, with the intention the public should use it, but in order for Roush to experiment with it; the machine was brought into the café without defendant's knowledge or consent; defendant returned from out of town and went to the café about fifteen or twenty minutes before the officers appeared; Roush was busy getting lunch for a truck

driver, and before he had time to carry out defendant's instructions relative to the machine, the officers appeared.

Defendant complains concerning the exclusion of certain testimony of the witness Roush. The excluded testimony pertains to the intention of Roush in taking the machine out of the storage shed and bringing it into the café. The complaint also includes the refusal of the court to permit the witness Roush to testify concerning the alleged instructions he received from the defendant after defendant observed the machine in the café. The pertinent portion of the direct examination of the defense witness, Roush, was as follows:

"Q. Did you intend that the public should play it? A. I did not.

"[Attorney for appellee]: That is objected to as calling for a conclusion.

"The Court: Yes, sustained. It is stricken out. The jury is instructed to disregard it. The public did not play it. Mr. Myers returned between 7 and 8 on the 15th.

"Q. And did you have a conversation with him about this machine? A. I did.

"Q. What was that conversation?

"[Attorney for appellee]: That is objected to as incompetent, irrelevant and immaterial and not binding on the state.

"The Court: Sustained.

"Q. Had he ever told you to put the machine out there? A. He had not.

"[Attorney for appellee]: That is objected to as calling for a conclusion.

"[Attorney for appellant]: Whether he ever had been told to put it out wouldn't be a conclusion. He knows whether he was told or not.

"The Court: Overruled.

"[Attorney for appellee]: It is leading.

"The Court: Sustained.

"Q. I will ask you if you were ever told by Mr. Myers to put that machine out there?

"[Attorney for appellee]: That is objected to as leading.

"The Court: Sustained.

"Q. Did you ever have any instructions of any kind or character from Mr. Nab Myers concerning that slot machine? A. I did not.

"[Attorney for appellee]: That is objected to as leading, incompetent, irrelevant and immaterial and not binding upon the state.

"The Court: Sustained."

The cross-examination of the witness Roush was, in part, conducted by the trial court. That portion of the cross-examination reads:

"The Court: Did he [defendant] say anything to you about the slot machine? A. He did.

"The Court: What did he say, Oh!

"[Attorney for appellee]: That is what I objected to.

"[Attorney for appellant]: I would like the court to go ahead.

"The Court: Well, after he said something to you about the slot machine, was there anything done with the slot machine? A. I went ahead fixing supper for this truck driver that was there, and during that time before I had time to carry out his instructions  . . .

"The Court: Wait a minute. I just ask was anything done with the slot machine. A. No.

"The Court: Go ahead.

"After the conversation between me and Mr. Myers there was nothing done with the slot machine for approximately fifteen minutes until the sheriff came."

We shall first consider the alleged error in refusing to permit the witness, Roush, to testify concerning the purported instructions he received from the defendant concerning the machine. No proffer was made by defendant at the time of the trial which discloses what the instructions from defendant to Roush would have revealed had the instructions actually been received in evidence. Nor was the evidence of the witness Roush produced in support of the motion for a new trial. Since the record fails to disclose the testimony of the witness himself, had he been permitted to testify, we cannot review the alleged error. (*Walker v. S. H. Kress & Co.*, 147 Kan. 48, 56, 75 P. 2d 820, and cases therein cited.)

Was the testimony of the witness, Roush, to the effect that it was not his intention the public should play the machine, properly stricken on the ground that the question as to his intent called for a conclusion? The real issue in the instant case was whether defendant's employee, Roush, had violated the law with defendant's knowledge or consent. The instructions contained the statute upon which the prosecution was based and also an instruction interpreting the statute. Neither the state nor defendant objected to the instruction which interpreted G. S. 1935, 21-1508. The instruction became the law of the case. Instructions numbered 2 and 3 were:

"2. Defendant is being prosecuted under the first count of the information under section 21-1508, General Statutes of Kansas, 1935, which reads as follows:

" '21-1508. *Setting up or keeping slot machine; penalty.* Every person who shall set up or keep in any room where merchandise is sold or kept for sale, hotel office, club room, saloon, joint, gambling house, brothel or other public or private place, any slot machine or gambling device, devised and designed for the purpose of playing any game of chance for money or property, and shall induce, entice or permit any person to bet or wager any money or other things of value thereon, shall on conviction thereof be adjudged guilty of a

misdemeanor under this act, and shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail for a term of not less than thirty days nor more than one year.'

"3. Section 21-1508 of the Revised Statutes of Kansas for 1935 uses the words 'set up or keep.' 'Set up or keep' does not mean mere possession, for you are instructed that the mere possession or ownership of a slot machine is not of itself an offense under the statutes of Kansas, but it is the unlawful operation of the same, and 'set up or keep' as used in said section means the unlawful operation of the same or the permission for others to gamble thereon."

The witness, Roush, testified the public did not play the machine. He also testified he knew that the officer who came into the café was a deputy sheriff, and that when the officer requested that he make change for him, he did so. His testimony was further to the effect that he had gotten the machine out of the shed in order to experiment with it and for that purpose had put a quarter's worth of nickels into it. He had, therefore, stated what he had done and his purpose in doing so. The expression of his intent or intention that the public should not play the machine was pertinent and competent. (1 Wigmore on Evidence, 2d ed., p. 1017; 4 Wigmore on Evidence, 2d ed., p. 185; 22 C. J. 610, 612, § 704; *Baker v. Railway Co.,* 85 Kan. 263, 116 Pac. 816; *Eckerd v. Weve,* 85 Kan. 752, 118 Pac. 870; *Slinker v. Building Association,* 96 Kan. 672, 153 Pac. 537.) In the Eckerd case, *supra,* this court said:

"It is argued that it was the province of the jury to find the appellant's state of mind. It is true that the jury must determine the fact, but this does not preclude the testimony. While the circumstances attending the act of a party are competent evidence of the condition or state of his mind in doing it, his own testimony as to his motive, purpose and intent is also competent. (*Bice v. Rogers,* 52 Kan. 207, 34 Pac. 796; *The State v. Kirby,* 62 Kan. 436, 63 Pac. 752; *The State v. Hetrick,* 84 Kan. 157, 113 Pac. 383; *Fenwick v. State,* 63 Md. 239; 1 Wig. Ev., § 581.)" (p. 758.)

True, the jury might not have believed the testimony as to the intent of the witness, but that fact did not render the testimony incompetent. The testimony was improperly excluded.

Defendant next complains concerning deposition testimony which was excluded. It was part of the testimony of one Chris Inger, who appears to have been the owner of the machine. The testimony, the state's objection thereto and the ruling thereon, were:

"I wanted to return to Omaha so I stored the slot machine in the shed behind Myers' café. The shed has a padlock on it. There was approximately $1 worth of nickels in the machine. I got the slot machine on a bill. At the

time I stored the slot machine in Myers' shed, it was my intention to later stop and pick it up.

"[Attorney for appellee]: Object to that as calling for a conclusion.

"The Court: Sustained."

The testimony touching the intention of this witness was likewise competent upon the principle heretofore stated.

Defendant also contends the court erred in excluding the evidence of the conversation between the witness, Inger, and the defendant, which was had concerning the machine at the time it was left in defendant's shed on May 13. The testimony may have been competent, but it has not been brought into the record before this court and the alleged error cannot be reviewed. (*Walker v. S. H. Kress & Co.*, supra.)

Defendant further contends the court erred in refusing to give his requested instructions 2 and 5, and erred in giving instruction number 9. Instruction number 9 reads:

"One defense in this case is that Edgar Roush, the servant and agent of defendant, placed the slot machine in the defendant's place of business without the knowledge of defendant solely for his own amusement. The defendant cannot be found guilty for anything his agent did for his own amusement *that was not unlawful, but for anything that Edgar Roush did in the place of business of defendant in connection with his employment and as the agent of defendant, defendant would be* responsible, and the evidence as to what Edgar Roush did or knew about the placing or operation of said slot machine may be considered by you along with all the other evidence, in finding and determining whether defendant intended to or did violate said section 21-1508 and whether or not he is guilty thereunder." (Italics ours.)

Specific objection was made to this instruction when given and again on motion for a new trial. The complaint is the jury was not advised, in this or any other instruction, that defendant would not be guilty unless the machine was placed in the café for an unlawful purpose with defendant's knowledge or consent. It is contended the italicized portion of the instruction may have been interpreted by the jury to mean that defendant should be found guilty for whatever his agent or employee, Roush, did in connection with his employment. Defendant urges that interpretation was probably placed upon the instruction for the reason the court did not attempt by this or any other instruction to define Roush's employment, and in nowise differentiated between acts performed in furtherance of that employment and unlawful acts performed by the employee pursuant to his own purposes. We think, in view of the defense, the instruc-

tion did not constitute an adequate or accurate statement of the law and that the jury was probably misled thereby.

The phrase, to wit, *"that was not unlawful,"* also may have confused the jury. From it the jury may have inferred defendant would be guilty of an *unlawful* act performed by Roush in pursuing his own ends, during the time of his employment. That, of course, is not the law. In *Kemp v. Railway Co.,* 91 Kan. 477, 138 Pac. 621, numerous authorities were reviewed, and it was stated:

"The test is also considered in 1 Thompson's Commentaries on the Law of Negligence, § 526, in which the distinction is stated between acts done by the servant in pursuing his own ends, although done in the time covered by his employment, and those done in pursuance of his duty in the course of his employment. The author gives a quotation from the opinion in *Morier v. St. Paul, Minneapolis & Manitoba Ry. Co.,* 31 Minn. 351, 17 N. W. 952, a part of which is:

" ' "If the servant step aside from his master's business, *for however short a time,* to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all authorities. (p. 353.)" ' (1 Thompson's Commentaries on the Law of Negligence, § 526.)

"Another author says:

" 'The simple test is, whether they were acts *within the scope of his employment;* not whether they were done while prosecuting the master's business; *but, whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him.'* (Master & Servant, Wood, 2d ed., § 307.)

"It is difficult to state with precision the exact meaning of the phrase 'scope of the employment,' but from the foregoing expressions in decisions and textbooks it may be said generally that to fix liability upon the master or employer the act must not only be done in the time, but in pursuance of the objects of the employment, in furtherance of duty. If done solely to accomplish the employee's own purpose or device, although in an interval of his regular service, the employer is not liable." (p. 481.)

(See, also, *Zamora v. Wilson & Co.,* 129 Kan. 285, 282 Pac. 719; *Mayhew v. DeCoursey,* 135 Kan. 184, 10 P. 2d 10.)

Here, again, it may be said the jury, under proper instructions, might have concluded defendant had knowledge of Roush's conduct and had consented thereto. Defendant was nevertheless entitled to a clear and adequate instruction upon his theory of the lawsuit. Defendant's requested instructions numbered 2 and 5, or the substance thereof, touching the elements of defendant's knowledge or consent, should have been given.

The state contends defendant had observed the machine after he returned to the café, and that if he did not instruct his employee to

take it out then he consented to its being there. One of the difficulties with that contention is the witness, Roush, was not permitted to testify concerning the instructions he received from defendant in that regard.

The judgment is reversed with directions to grant a new trial.