[No. 29452. Department Two. February 21, 1945.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES CROSS, *Appellant.*[1]

[1]Reported in 156 P. (2d) 416.

*James W. Mifflin* and *Henry Clay Agnew,* for appellant.

*Lloyd Shorett* and *Max R. Nicolai,* for respondent.

SIMPSON, J.—Appellant was charged, tried, and convicted on several counts of the crime of receiving money which was designed and intended to be bet on a horse race and of the crime of recording a bet designed and intended to be wagered on the result of a horse race. A demurrer to the information was interposed and overruled. A motion challenging the sufficiency of the evidence was denied.

After the verdict was returned, appellant moved in arrest of judgment upon the ground that the facts stated in the information did not constitute a crime and that there had been no proof of some element of the crime for which he had been tried. That motion was denied and the court imposed sentence in accordance with the law.

The assignments of error are: In overruling the demurrer to the information, in failing to sustain appellant's challenge to the sufficiency of the evidence, and in the denial of his motion in arrest of judgment. Errors were also assigned in refusing to give four requested instructions. Appellant did not introduce evidence on his own behalf.

Following is a general outline of the facts as presented to the jury. Appellant had a room in the rear of a barbershop in downtown Seattle. March 15, 1944, a man attached to the prosecuting attorney's office went to appellant's room and placed bets on horses running at Oaklawn, Hot Springs, Arkansas, and Tropical Park, Florida. March 16, 1944, the same man returned to appellant's place of business, made other bets with appellant, and collected his winnings from wagers made on his first visit. The individual visited the room on several other occasions, made bets, and collected additional winnings. April 12th of the same year, the business room of appellant was raided by the police officers, who arrested appellant and searched him and his room.

At the time of arrest, appellant was in the act of recording in a notebook a two-dollar bet made by a customer. Other notebooks used for recording bets, a racing calendar, racing forms, and entry forms were found. At that time ap-

pellant had on his person several envelopes containing the winnings of persons who had bet upon the races. All bets were upon horses running in Arkansas and Florida.

█ The evidence introduced showed beyond any doubt that appellant received money intended to be bet on horse races and that he recorded the bets. This was sufficient proof of the violation of our gambling statute, Rem. Rev. Stat., § 2473 [P. C. § 8930], Laws of 1909, chapter 249, p. 956, § 221. *State v. Pearlman*, 136 Ohio St. 36, 23 N. E. (2d) 499; *People v. Mumford*, 171 Misc. 397, 12 N. Y. S. (2d) 925; *People v. Newman*, 24 Cal. (2d) 168, 148 P. (2d) 4.

The statute just mentioned reads:

"Every person, whether acting in his own behalf, or as an agent, servant or employee of another person within or outside of this state, who shall sell any pool, make any book, or receive, record, register, transmit or forward any bet or wager, or any money or property or thing of value designed or intended to be bet, wagered or hazarded, upon the result of any contest or trial of skill, speed or endurance between men or beasts, whether such contest or trial take place within or outside of this state, or upon the result of any lot, chance, casualty, or uncertain or contingent event whatever, shall be punished by imprisonment in the state penitentiary for not more than five years."

It is appellant's contention that Rem. Rev. Stat. (Sup.), § 8312-1 [P. C. § 2706-31] *et seq.*, Laws of 1933, chapter 55, p. 290, repealed and superseded the former law set out above and rendered it null and void.

Section 7 of the act of 1933 provides in part:

"It shall be unlawful to conduct pool selling, book making, or to circulate hand books, or to bet or wager on any horse race other than by the pari-mutuel method, or for any licensee to take more than ten (10) per centum of the gross receipts of any pari-mutuel machine; or for any licensee to compute breaks in the pari-mutuel system otherwise than at five cents. Any wilful violation of the terms of this act, or of any rule, regulation or order of the commission shall constitute a gross misdemeanor and when such violation is by a person holding a license under this act, the commission may cancel the license held by the offender, and such cancellation shall operate as a forfeiture of all rights and privileges granted by the commission and of all sums of

money paid to the commission by the offender; and the action of the commission in that respect shall be final. . . ."

Section 10 of the same act states: " . . . All acts in conflict herewith are hereby repealed."

Respondent, as stated in its brief, takes the position that the laws of 1933 did not legalize bookmaking, but merely created a specifically defined exception to the general prohibition against bookmaking and betting on horses.

Our consideration of the issues presented involves a construction of the two statutes. If the latter repeals the former, it must be by implication, for the reason that the act of 1933 does not definitely refer to and repeal the earlier act. The fact that the act of 1933 states that all acts in conflict are repealed does not constitute a direct repeal. *Batchelor v. Palmer,* 129 Wash. 150, 224 Pac. 685; *In re McKelvey,* 19 Cal. App. (2d) 94, 64 P. (2d) 1002.

Repeals by implication are not favored. So, to work a repeal, the implication must be one where the intention is clear and necessary, and the two acts cannot stand together on account of the latter being irreconcilable with the former act. If possible, statutes will be construed to maintain the integrity of both. *Paine v. State,* 156 Wash. 31, 286 Pac. 89; *Kruesel v. Collin,* 171 Wash. 200, 17 P. (2d) 854; *State ex rel. Washington etc. Bank v. Bellingham,* 8 Wn. (2d) 233, 111 P. (2d) 781; *Buell v. McGee,* 9 Wn. (2d) 84, 113 P. (2d) 522; *In re Sanford,* 10 Wn. (2d) 686, 118 P. (2d) 179.

Repeal by implication is effective if the latter act is intended to cover the entire field of litigation upon a particular subject. *State ex rel. Spokane etc. Bank v. Justice Court,* 189 Wash 87, 63 P. (2d) 937; *Peterson v. King County,* 199 Wash. 106, 90 P. (2d) 729.

The purpose of the act of 1933 is evidenced by the following sections:

"Sec. 8. For the purpose of encouraging the breeding, within this state, of valuable thoroughbred and/or standard bred race horses, at least one race of each day's meet shall consist exclusively of Washington bred horses.

"Sec. 9. . . . and the remaining eighty (80) per centum of all sums collected by the commission shall, on the next business day following the receipt thereof, be paid to the state treasurer, and by him placed in the old age pension fund of the state treasury, which is hereby created. . . . Any monies collected or paid to the commission under the terms of this act, and not expended by the commission as herein provided, at the time of making its report to the legislature, shall be paid to the state treasurer and be placed in the old age pension fund of the state treasurer."

It is quite evident that the purposes sought to be obtained under the provisions of the above-quoted portions of the act would not be furthered by the repeal of the act of 1909 and the allowance of betting and bookmaking by unlicensed operators, the reason being that no profit or fees could be paid into the fund for the benefit of the old age pension if the result would be to allow betting or bookmaking by others than those named in the 1933 act. The purpose indicated in the act was not changed by the amendment of 1935, Laws of 1935, chapter 182, p. 863, § 30, which directed that the profit be paid into the state's general fund. This of itself is an indication of a desire on the part of the legislature to retain as effective the provisions of the old act.

The question before us now has received the attention of this court in *State v. Binnard,* 21 Wash. 349, 58 Pac. 210. In that case, the defendant was convicted of keeping open a drinking saloon on Sunday in violation of § 210 of Hill's Penal Code, which reads as follows:

"Any person who shall keep open any play-house or theater, race-ground, cock-pit, or play at any game of chance for gain, or engage in any noisy amusements, or keep open any drinking or billiard saloon, or sell or dispose of any intoxicating liquors as a beverage, on the first day of the week, commonly called Sunday, shall, upon conviction thereof, be punished by a fine not less than thirty dollars nor more than two hundred and fifty dollars. All fines collected for violation of this section shall be paid into the common school fund."

The defendant contended that the act under which he

was charged had been repealed by a later act known as § 211 of Hill's Penal Code, which provided:

"It shall be unlawful for any person or persons of this state to open on Sunday for the purpose of trade or sale of goods, wares, and merchandise, any shop, store, or building, or place of business whatever; *provided,* that this section shall apply to hotels only in so far as the sale of intoxicating liquors is concerned, and shall not apply to drugstores, livery-stables or undertakers. Any person or persons violating this section shall be guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not less than twenty-five dollars nor more than one hundred dollars."

In passing upon the contention made by defendant, this court stated:

"Section 211 does not repeal § 210 by any express words, and, if the latter is repealed by the former, it is repealed by implication, and such repeals are not favored by the law. It is a well established rule of law that if two statutes can, by any fair construction, be reconciled with each other, neither will be held to have repealed the other. Says Mr. Bishop in his admirable work on Statutory Crimes:

" 'An affirmative statute repeals by implication so much of the prior law as, after the harmonizing work of interpretation is fully done, remains repugnant to it; for it is the last expression of the will of the law making power. If two acts in seeming conflict can be reconciled by any fair construction, so that both may stand, they must be; and then no repeal will be held to take place. And it is the same with a provision of the common law and a statute. . . . The law does not favor repeals by implication, and they will not be adjudged to occur except when they are inevitable, or plainly the legislature means them. Such legislative intent is never, *prima facie,* presumed. Hence, in restraint and limitation of repeals, the statutes are strictly construed. Thus, as already seen, statutes in derogation of the common law, or of a prior statute, are construed strictly, not operating beyond their words or the clear repugnance of their provisions; that is, the new displaces the old only as directly and irreconcilably opposed in terms. For when the legislative power professes to add to the law, as it does in the enactment of an affirmative statute, we cannot assume for it an intention also to subtract from it; while there is any admissible rule of interpretation which, applied to the old, to the new, or to both, will enable all to stand.

For example, the rule of specific and general, already more than once mentioned, illustrates this. By interpreting the specific provisions as furnishing exceptions and qualifications for the general ones, without reference to their order or dates, all are made to stand together, and repeal is avoided.' (Bishop, Statutory Crimes (2d ed.), §§ 154-156.

"Here we have two statutes seemingly in conflict, but one is specific and the other general; and, applying the rule as above laid down by Mr. Bishop, and which we deem the correct one, we are led to the conclusion that both statutes can stand together, and that § 211 does not repeal § 210 in the particular mentioned." *State v. Binnard,* 21 Wash. 349, 58 Pac. 210.

The following decisions are helpful in pointing the way to a proper conclusion in this case. Prior to 1925, there was in force in the state of Utah a statute (Section 8161, Compiled Laws of Utah 1917) which prohibited pool selling and bookmaking. This statute is quite similar to our act of 1909. In 1925, the legislature of Utah passed an act, known as the Redd Act, which legalized pari-mutuel betting. Sections 6 and 7 of that act provided:

"Sec. 6. It shall be unlawful to make or place any wager on the result of any race held under the provisions of this act; provided, however, that bets or wagers made under the co-operative or pari-mutuel system of betting and wagering shall not be unlawful, and said co-operative or pari-mutuel system of betting or wagering on the results of said races shall be under the regulations of the commmission.

"Sec. 7. All Acts or parts of Acts in conflict herewith are hereby repealed."

The 1925 act was repealed in 1927, after which time certain individuals commenced preparation for racing meets with the intention of operating pari-mutuel betting machines. An action to enjoin enforcement of the older law relating to gambling was instituted on the theory that the 1925 act repealed the prior law. The supreme court of Utah, in *Lagoon Jockey Club v. Davis County,* 72 Utah 405, 270 Pac. 543, held that the law of 1925 had not repealed the older law. In passing upon the question, the court stated:

"The question, however, is, Were the pool selling provisions of section 8161, relating to pari mutuel pool selling

on horse races, absolutely repealed by the enactment of the Redd Act, as contended by respondents, or was the Redd Act, in effect, only a proviso or an exception ingrafted upon section 8161, as contended by appellants? If it was, in effect, a proviso or an exception, then there is much force in the contention, from the standpoint of both reason and authority, that the repeal of the Redd Act would leave all of the provisions of section 8161, including the pool selling provision, in full force and effect.

" . . . We cannot avoid the conclusion that the whole effect of the Redd Act was to except a certain class of pool sellers from the provisions of section 8161 and provide that as to them pool selling would not be unlawful. That class of pool sellers was such as operated under the provisions of the Redd Act as therein prescribed."

This holding was cited with approval in *The People v. National Life Ins. Co.,* 367 Ill. 35, 10 N. E. (2d) 398.

The question before us has been considered by the courts of California on several occasions. That state had an old statute, § 337a Penal Code of California, which provided:

"Every person . . . who, whether for gain, hire, reward, or gratuitously, or otherwise, at any time or place, records, or registers any bet or bets, wager or wagers, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, or upon the result or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever; . . . is punishable by imprisonment in the county jail or state prison for a period of not less than thirty days and not exceeding one year."

In 1933, the legislature passed an act which provided for pari-mutuel betting on horse races conducted on duly licensed tracks where the wagers were made and placed within the enclosures containing the tracks. In 1935, the act just mentioned was amended by providing:

"A wager made inside an enclosure under the pari-mutuel system for a principal who is not within the enclosure shall be considered a wager made within the enclosure for the purpose of this act and any activity of the principal in connection with such wager shall not be considered a wager made outside the enclosure." [Laws of California, 1935, chapter 719, p. 1943, § 3.]

In passing on the question of whether the acts of 1933 and 1935 repealed the older act, the court stated in *People v. Wilson,* 19 Cal. App. (2d) 340, 65 P. (2d) 834:

" 'We are of the opinion that the act of 1933, as amended in 1935, permitting pari-mutuel betting on horse races, did not effect a repeal of the provisions of section 337a of the Penal Code which prohibited any betting and registering of bets on horse races. It merely provided one exception under which one form of betting on horse races was permissible in California. It is clear from a study of the act of 1933, as amended, that the legislature not only did not intend to repeal the general law prohibiting general betting and registering of bets on horse races, but intended that the law remain in force subject to one exception, namely, that pari-mutuel betting be permitted if conducted in the manner and under the conditions specified in the act.' "

The rule announced in the foregoing case has been approved in *In re Goddard,* 24 Cal. App. (2d) 132, 74 P. (2d) 818; *In re Walker,* 11 Cal. (2d) 464, 80 P. (2d) 990, 117 A. L. R. 825; *Bias v. Ohio Farmers' Indemnity Co.,* 28 Cal. App. (2d) 14, 81 P. (2d) 1057; *State v. Myers,* 152 Kan. 56, 102 P. (2d) 1023; *People v. Sullivan,* 60 Cal. App. (2d) 539, 141 P. (2d) 230; *Ash v. State,* 134 Tex. Crim. App. 208, 114 S. W. (2d) 889.

It is quite true that our pari-mutuel betting act is somewhat different from the act passed by the California legislature. However, it is entirely clear that in both instances, in California and Washington, the legislatures intended that, in passing acts to control pari-mutuel betting, they did not propose to change in any way the general laws relating to gambling.

An analysis of the statutes under consideration brings to light the fact that the act of 1909 is general in its scope, while that of 1933 is special, in that it only attempts to regulate pari-mutuel betting at the race tracks and has no relation to acts committed in other places.

It is apparent that the legislature, in passing the latter act, intended to make an exception from the general gambling act and allow pari-mutuel betting and in so doing did not intend to cover the entire field of betting and record-

ing bets upon horse racing. This being true, it is evident that the special statute did not repeal the general statute.

The policy in this state toward commercial gambling is clear and unequivocal. A reference to our statutes on that subject brings to light that commercial gambling in all of its phases has been uniformly condemned by our legislature. There is nothing in the act authorizing pari-mutuel betting which indicates in the slightest degree an intention to depart from the public policy of this state which condemns and prohibits commercial gambling.

It is quite clear that, if the legislature had intended to depart from its long-established policy, that intent would have been indicated in the pari-mutuel act. That act, however, when read in its entirety shows a specific intention to retain the general prohibition.

We hold that the act allowing pari-mutuel betting upon horse racing did not repeal or change the general act relating to gambling and that the former act continued in full force and effect.

Appellant complains that the court committed error in its refusal to give four requested instructions. The first requested instruction raised the question as to whether it was necessary for the state to prove that a horse race was actually held. We do not regard this as a serious question. It is quite clear that the statute was designed to prohibit the placing and recording of bets on horse races, regardless of whether the race was actually held. *Ex parte Walsh,* 59 Tex. Crim. App. 409, 129 S. W. 118.

Requested instruction number two related to the definition of a bunco game, which "would not amount to the crime charged in any count of the information." Number three was intended to inform the jury that it was not unlawful to register or submit bets if done under the pari-mutuel system. The last requested instruction contained a definition of pari-mutuel betting.

The trial court ruled correctly in refusing to give the instructions asked for by counsel for appellant. Appellant was charged, tried, and convicted of a violation of the law of this state which forbids the taking and recording of

bets on horse racing. The contents of the requested instructions were entirely foreign to the questions presented to the jury.

Finding no error, we affirm the judgment.

BEALS, C. J., BLAKE, ROBINSON, and MALLERY, JJ., concur.

---

April 5, 1945. Petition for rehearing denied.

[1]Reported in 156 P. (2d) 422.