[No. 40514. Department One. January 8, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. CLAY ENSMINGER
*et al., Appellants.*\*

*Reported in 463 P.2d 612.

 

*Victor J. Felice,* for appellants.

*Donald C. Brockett,* for respondent.

WEAVER, J.—Defendants Clay Ensminger and Elmo Beckemeier were charged, convicted, and sentenced pursuant to RCW 9.47.060 on two counts of bookmaking by receiving "a bet or wager upon the result of a contest or trial of speed or endurance between horses." Each defendant was sentenced to 90 days in the county jail, placed on probation for 3 years, and ordered to pay costs. They claim they were denied equal protection of the law.

 It is a fundamental principle of constitutional law that, in the administration of criminal justice, no person shall be subjected, for the same offense, to any greater or different punishment from that to which others may be subjected; hence, statutes that provide different degrees of punishment for different persons for the same act are unconstitutional.

Upon this principle, defendants make their most cogent argument. They claim that, based upon the same facts, the prosecutor could choose or elect to charge them under RCW 67.16.060 (penalty: punished as a gross misdemeanor), RCW 9.47.140 (penalty: not more than 3 years in the penitentiary), or RCW 9.47.060 (penalty: not more than 5 years in the penitentiary).

It is a denial of equal protection of law if the prosecutor has discretion to seek varying degrees of punishment by proof of identical criminal elements. *State v. Collins,* 55 Wn.2d 469, 470, 348 P.2d 214 (1960); *State v. Canady,* 69 Wn.2d 886, 421 P.2d 347 (1966); *Olsen v. Delmore,* 48 Wn.2d 545, 550, 295 P.2d 324 (1956); *see State v. Reid,* 66 Wn.2d 243, 247, 401 P.2d 988 (1965).

We consider the three statutes in the order they were enacted.

(1) *Laws of 1909, ch. 6, § 1.*

January 13, 1909, in his third message to a joint session of the legislature, Governor Albert E. Mead urged:

> that you make race track gambling, book making and pool selling felonies and that you attach thereto penalties sufficiently severe to insure their permanent suppression. House Journ. 26 (1909); Senate Journ. 35 (1909).

The legislature was quick to respond. February 11, 1909, Laws of 1909, ch. 6, was approved by the Governor. It is entitled:

> An act relating to betting, wagering, pool-selling and book-making upon horse races, or upon the result of any trial or contest of speed or endurance of any animal, declaring the violation thereof a felony, fixing a penalty.

The entire act is set forth in the margin. It is codified as RCW 9.47.140.[1] Note (a) that RCW 9.47.140 is not only

---

[1] "RCW 9.47.140 Race track gambling. Any person who receives, records or registers bets, stakes or wagers, or who sells pools, or makes a book or books, upon any horse race, or upon the result of any trial or contest of speed or power of endurance of any animal, whether such race, trial or contest takes place within or without this state; or any person who receives, registers, records, forwards or transmits, or purports or pretends to receive, register, record, forward or transmit, in any manner whatsoever, any money, checks, credits, or any other representative of value, or any property, thing or consideration of value whatsoever, bet, staked or wagered, by or for any other person, upon any such race or result, whether to be bet, staked or wagered within or outside this state; or any person who uses, or has in his possession for use, any book, paper, board, device, apparatus or paraphernalia, for the purpose, actual or pretended, of receiving, recording, registering, forwarding or transmitting any bets, stakes or wagers, or of bookmaking or pool selling, upon any such race or result; or any person who keeps, manages, conducts, maintains or occupies any house, room, shop, shed, tenement, tent, booth, building, float or vessel, or any part thereof, or who keeps, manages, conducts, maintains or occupies any place or stand, of any kind, upon any public or private ground, street, park, garden, enclosure or place, for the purpose of receiving, recording, registering, forwarding or transmitting any bets, stakes or wagers, or of selling pools, or of bookmaking, upon any such race or result; or any person who being the owner, lessee or occupant of any house, room, shop, shed, tenement, tent, booth or building, float or vessel, or part thereof, or of any ground, park, garden, enclosure or place, knowingly permits

sufficiently broad to encompass the charge against defendants of bookmaking and of receiving a wager upon the result of a contest of speed between horses; but it also proscribes other related activities; and (b) that it fixes the penalty for violation as "[imprisonment] in the penitentiary for a period of not less than one nor more than three years."

(2) *Laws of 1909, ch. 249.*

As the last chapter of its regular session, the same legislature passed Laws of 1909, ch. 249 (p. 890 *et seq.*), entitled:

An act relating to crimes and punishments and the rights and custody of persons accused or convicted of crime, and repealing certain acts.

It is, in truth, a complete criminal code; it encompasses 444 sections in its 140 pages. Section 221 of the act, now codified as RCW 9.47.060, is set forth in the margin.[2]

We note (a) that RCW 9.47.140 (the first 1909 statute, note 1) is more specific in certain details than RCW 9.47.060 (Section 221 of the second 1909 statute, note 2); however, both proscribe the charge of the information

---

the same to be used or occupied for any of the purposes herein prohibited, or who knowingly permits to be kept, exhibited or used therein any book, paper, board, device, apparatus or paraphernalia, for the purpose of recording or registering such bets, stakes or wagers, or for the purpose of such pool selling or bookmaking; or any person, whether as principal, employer, owner, proprietor, agent, employee or assistant, or as officer, agent or employee of a corporation, who aids, assists or abets, in any manner, any of the said acts or things which are hereby forbidden, is guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary for a period of not less than one, nor more than three, years."

[2]"RCW 9.47.060 Pool selling and bookmaking. Every person, whether acting in his own behalf, or as an agent, servant or employee of another person within or outside of this state, who shall sell any pool, make any book, or receive, record, register, transmit or forward any bet or wager, or any money or property or thing of value designed or intended to be bet, wagered or hazarded, upon the result of any contest or trial of skill, speed or endurance between men or beasts, whether such contest or trial take place within or outside of this state, or upon the result of any lot, chance, casualty, or uncertain or contingent event whatever, shall be punished by imprisonment in the state penitentiary for not more than five years."

against defendants; (b) that some of the specifics omitted from § 221, Laws of 1909, ch. 249 may be included in other sections of Laws of 1909, ch. 249, a question that is not before us in the instant case; and (c) that a violator of RCW 9.47.060 "shall be punished by imprisonment in the state penitentiary for not more than *five* years." (Italics ours.)

(3) *Laws of 1933, ch. 55* (codified: RCW 67.16) is an act creating the Washington Horse Racing Commission and claiming 5 per cent of the gross receipts for the commission of "all parimutuel machines at each race meet" (RCW 67.16.100) conducted by state licensees.

Laws of 1933, ch. 55, § 7 (RCW 67.16.060) makes it unlawful to conduct

> book making, or to circulate handbooks, or to bet or wager on any horse race other than by the pari-mutuel method . . .

RCW 67.16.060 continues:

> Any wilful violation of the terms of this chapter, or of any rule, regulation or order of the commission shall constitute a gross misdemeanor . . .

The answer to defendants' contention that they could have been charged with a gross misdemeanor under RCW 67.16.060 is found in *State v. Cross,* 22 Wn.2d 402, 156 P.2d 416 (1945).

In *Cross* the court held that the 1933 act was a special and not a general statute; that "it only attempts to regulate pari-mutuel betting at the race tracks and has no relation to acts committed in other places"; and that it did not repeal or change the general act relating to gambling, which continued in full force and effect. The 1933 act and its subsequent amendments have no bearing on the instant case.

The sole problem remaining in this phase of the case is the determination of the effect, if any, that the second 1909 statute (RCW 9.47.060, note 2) had upon the first 1909 statute (RCW 9.47.140, note 1).

■ Repeal of one statute by implication by the later enactment of another is not favored in the law. To effect a repeal, the implication must be one where the intention is clear and necessary, and the two acts cannot stand together because the later is irreconcilable with the former. *State v. Cross, supra,* and authorities cited at 405.

If, however, the later act covers the entire subject matter of the earlier legislation, is complete in itself, and is evidently intended to supersede the prior legislation, the former statute is repealed. *State ex rel. Spokane & Eastern Branch of Seattle First Nat'l Bank v. Justice Court,* 189 Wash. 87, 90, 63 P.2d 937 (1937); *State ex rel. Reed v. Spanaway Water Dist.,* 38 Wn.2d 393, 229 P.2d 532 (1951).

■ Laws of 1909, ch. 249 is a comprehensive criminal code of 444 sections. It is apparent that the legislature intended to create a single, complete and exclusive body of law. 2 Sutherland, Statutory Construction 257, § 3712 (3d ed. 1943); *cf. State v. Kolocotronis,* 73 Wn.2d 92, 103, 436 P.2d 774 (1968).

■ We conclude, therefore, that Laws of 1909, ch. 249, § 221 supersedes Laws of 1909, ch. 6, § 1 and that defendants could not have been charged thereunder; hence, the prosecuting attorney could not have elected to proceed against defendants under any statute other than RCW 9.47.060; defendants were not denied equal protection of the law.

Our conclusion is fortified by the fact that Laws of 1909, ch. 249, § 49 provides in part:

> all statutes, laws and rules heretofore in force in this state, whether consistent or not with the provisions of this act, unless expressly continued in force by it, are repealed and abrogated.

■■ Defendants contend that the state divested itself of jurisdiction to prohibit bookmaking when, by RCW 35.22.280(36), it gave cities of the first class power to regulate practices offensive to public morals, health, peace, and good order within its limits. We do not agree. A city ordinance and a state statute may coexist unless the ordinance is in conflict with the state or federal constitution or

the general laws of the state. *State v. Lundquist*, 60 Wn.2d 397, 400, 374 P.2d 246 (1962), and authorities cited.

The remaining issues presented by defendants' assignments of error require a short reference to the facts that the jury was entitled to find from the evidence, some of it conflicting.

Defendant Beckemeier owned a tavern. For many years he and defendant Ensminger had been friends. The latter, who often frequented Beckemeier's tavern, admitted following and betting on horse races for some years.

A police officer in civilian clothes testified that both defendants participated in placing two of his bets upon a horse race; he won on one occasion and collected his winnings. When defendants were arrested at the tavern, the officers seized a navy surplus radio and some written notations identified with bookmaking. Both were admitted into evidence.

The court did not err when it refused to give an instruction on entrapment. The evidence is sufficient to support the conclusion that defendants were not persuaded or induced by the officer to do anything they were not in the practice of doing. There was no evidence of entrapment to go to the jury. The officer did no more than afford defendants an opportunity to commit the crime. This is not entrapment. *Seattle v. Muldrew*, 71 Wn.2d 903, 904, 431 P.2d 589 (1967), and authorities cited.

Two issues remain on this appeal. Defendants contend they should have been granted separate trials and that it was error to admit into evidence the navy surplus radio and the written notations indicating bookmaking activities.

We find no merit in either contention.

The evidence was sufficient to permit the jury to believe that defendants were engaged in a joint venture. Defendants do not demonstrate an abuse of the trial court's discretion when it denied separate trials. *See State v. Smith*, 74 Wn.2d 744, 756, 446 P.2d 571 (1968).

Once the state adduced proof that the items introduced into evidence were paraphernalia at the location of the

bookmaking activity, their admission into evidence was relevant; their weight as evidence was for the jury to determine.

Affirmed.

HUNTER, C. J., HAMILTON and McGOVERN, JJ., and DON-WORTH, J. Pro Tem., concur.

February 24, 1970. Petition for rehearing denied.

*Reported in 463 P.2d 617.